**SO ORDERED.**

**SIGNED March 31, 2025.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| In re: <br> Linder Oil Company, A Partnership, <br> _Debtor_ | Case No. 17-51323 |
| Lucy G. Sikes, Chapter 7 Trustee, and <br> The Cadle Company, II, Inc. <br> _Plaintiffs_ | Chapter 7 |
| v. | Judge John W. Kolwe |
| Roger D. Linder <br> _Defendant_ | Adv. Proc. No. 19-5100 |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

This is an action brought by Lucy G. Sikes, the Chapter 7 Trustee ("Trustee") in the Linder Oil Company, A Partnership ("LOCAP" or "Debtor") bankruptcy case, against defendant, Roger D. Linder ("Mr. Linder").[1] The Complaint, as amended,

---

[1] The Cadle Company, II, Inc. was also a plaintiff in the Amended Complaint only as to Count 2, which asserted a state law conversion claim. Mr. Linder sought dismissal of that claim for lack of subject matter jurisdiction under 28 U.S.C. § 1334(b). While that motion had merit, the Court nonetheless abstained from considering that claim based on representations that Cadle was simultaneously pursuing that claim in the Federal District Court for the Eastern District of Louisiana. _See_ ECF # 23, which is the Court's Order, _inter alia_, abstaining from considering Count Two by Cadle.

asserts claims for the recovery of alleged preferential transfers and fraudulent conveyances under §§ 544, 547, 548, 550, and 502 of the Bankruptcy Code. Before the Court are: (i) a Motion for Summary Judgment filed by Mr. Linder seeking dismissal of the entire action; and (ii) a Motion for Partial Summary Judgment filed by the Trustee seeking a summary judgment on certain elements of her claim under § 547 of the Code. These matters were taken under advisement following the hearing on the Motions. The Court has considered the parties' pleadings, oral arguments, and the summary judgment record, and rules as follows.

## BACKGROUND

### A.    The Trustee's Waiver of Most Claims

The Court will first address the procedural posture of this case. The First Amended Complaint (ECF #20) focuses on two categories of transfers made by the Debtor to Mr. Linder: a single payment of $18,707.27 made on December 28, 2016, referred to as a "revenue check" (the "Revenue Transfer"); and a series of seven payments running from October 2016 through April 2017 in the amount of $3,377.00 each, totaling $23,639.00 with the stated reason for each payment being "office rent for Gretna location" (the "Office Rent Transfers"). The Trustee asserts six grounds for the recovery of these transfers in the Amended Complaint.[2]

After these motions were filed, the Trustee, in her opposition to Mr. Linder's Motion, indicated that she was opting to waive the majority of the claims in the Amended Complaint, leaving only the Trustee's claim under Count 1, which seeks avoidance of the Revenue Transfer and the Office Rent Transfers as preferential transfers under § 547 of the Code. There was some confusion on the scope of the waiver, however. In the Trustee's Opposition to Mr. Linder's Motion, the Trustee stated: "Having considered the evidence accumulated through discovery, the Trustee is willing to withdraw *only* Count I of the Complaint, solely with respect to the Office Rent Transfers (and not the Revenue Transfers)."[3] However, during the hearing on

---

[2] *See* ECF # 20 (First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 544, 547, 549, and 550, to Disallow Claims Pursuant to 11 U.S.C. § 502, and for Conversion).

[3] *See* Plaintiffs' Opposition, p. 3 (ECF #61) (emphasis in original).

these motions and other motions filed in a consolidated adversary proceeding, *Sikes v. Crescent Bank & Trust*, Adv. No. 19-5105, counsel for the Trustee clarified that the brief misstated the Trustee's intent, and that "[i]t should have said we are only maintaining the revenue piece of Count One and letting the rest of it go. So, that's all we argued in the brief, so I'm sure that is pretty evident…. We're basically arguing that this is a preference which is what we argued in our brief and not a fraudulent transfer, but we didn't say that correctly in the first paragraph."[4]

Accordingly, the only question remaining in this case is whether the Revenue Payment constitutes an avoidable preferential transfer under 11 U.S.C. § 547, as the Trustee has waived all other claims in this proceeding.

**B.    Undisputed Facts[5]**

On or about December 28, 2016, the Debtor paid Mr. Linder $18,707.27 by a check on the Debtor's First NBC Bank account, which transfer cleared the Debtor's bank on January 4, 2017. The transfer was stated to be a "revenue check," and the revenue came from production from multiple Louisiana oil and gas wells. This was the amount due to Mr. Linder for production for either the month of October 2016 or for August through October 2016.

Both the Trustee and Mr. Linder stated in their initial Statements of Fact that it was for October 2016,[6] and the Trustee asserted in her Memorandum in Support that the $18,707.27 transfer "was the amount of revenue due from the Debtor to the Defendant for the month of October 2016."[7] The Trustee then confusingly objected to

---

[4] *See* Transcript of August 27, 2024 Hearing, p. 12 (ECF #467 in Adv. No. 19-5105).

[5] *See* Roger Linder's Statement of Material Facts in Support of Summary Judgment (ECF #55-1); the Trustee's Statement of Material Facts Not in Dispute (ECF #58); Roger Linder's Objections to the Trustee's Statement of Material Facts (ECF #60-1); which objects only to Statements 12-18, largely focused on statements regarding discovery; and the Trustee's Statement of Disputed Facts (ECF #62),

[6] *See* Roger Linder's Statement of Material Facts in Support of Summary Judgment, ¶ 1 (ECF #55-1) ("Roger Linder ('Linder') was paid the exact amount that he was due in December 2016 for the October 2016 production." (footnote omitted)); Trustee's Statement of Material Facts Not in Dispute, ¶ 9 (ECF #58) ("The Transfer—in the amount of $18,707.27—which cleared the Debtor's bank account on January 4, 2017, was the amount of revenue due from the Debtor to Defendant for the month October 2016." (footnotes omitted)).

[7] *See* Trustee's Memorandum in Support, p. 12 (ECF #58).

3

Mr. Linder's statement and claimed that "Linder concedes the production for the well took place from August to October of 2016."[8]

The summary judgment evidence shows that the check represents production largely from October 2016, with production from some wells from August and September 2016.[9] Nevertheless, the parties are essentially in agreement that the check represents the production payment that would ordinarily be due for the period ending October 2016, so the dispute is immaterial.

It is also undisputed that Mr. Linder was an insider of the Debtor as 100% owner of Linder Energy Company, itself an 80% general partner of the Debtor, and as co-manager of the Debtor. He was not only scheduled as a nonpriority creditor of the Debtor, holding unsecured claims totaling nearly $700,000 against the Debtor as of the petition date, but also filed his own unsecured Proof of Claim No. 101 for $20,262.00 against the Debtor in the main bankruptcy case. The Court will address the disputed facts below in its analysis.

## JURISDICTION

The sole claim remaining before the Court is a preferential transfer claim under the Bankruptcy Code, 11 U.S.C. § 547, thus providing the Court "arising under" jurisdiction as provided by 28 U.S.C. § 1334(b). It is also a core claim under 28 U.S.C. § 157. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## SUMMARY JUDGMENT STANDARD

This Motion for Summary Judgment is subject to the usual Fed. R. Civ. P. 56 summary judgment standard, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 is applicable to adversary proceedings. *See* Fed. R. Bankr. P. 7056. The purpose of summary judgment is to

---

[8] Trustee's Statement of Contested Material Facts, ¶ A (ECF #62).
[9] *See* Exhibit C to the Trustee's Statement of Contested Facts (ECF #24).

pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[10] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[11] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, as the Trustee does here, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[12] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact. If the movant does not bear the burden of proof, the movant need only show that, based on the undisputed material facts, the plaintiff cannot win as a matter of law.

## LAW AND ANALYSIS

### A.  Avoidance of Preferential Transfers under 11 U.S.C. § 547(b)

Section 547(b) of the Bankruptcy Code allows the Trustee to avoid certain preferential transfers as follows:

> **(b)** Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
>
> **(1)** to or for the benefit of a creditor;
>
> **(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> **(3)** made while the debtor was insolvent;

---

[10] *Goodman v. Triple "C" Marine Salvage, Inc. (In re Gulf Fleet Holdings, Inc.),* 485 B.R. 329, 334 (Bankr. W.D. La. 2013), citing *Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

[11] *Id.*, citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[12] *Id.*, citing *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986).

**(4)** made—

>> **(A)** on or within 90 days before the date of the filing of the petition; or

>> **(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

> **(5)** that enables such creditor to receive more than such creditor would receive if—

>> **(A)** the case were a case under chapter 7 of this title;

>> **(B)** the transfer had not been made; and

>> **(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The plaintiff bears the burden of proving each of the five subsections (elements) of § 547(b). The Bankruptcy Code provides an assist with respect to element (3), which requires the plaintiff to prove that the transfer was made while the debtor was insolvent, as § 547(f) provides that for purposes of a preferential transfer claim "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 547(f). This presumption does not apply in this case, however, because Mr. Linder is an insider of the Debtor and the Revenue Transfer occurred more than 90 days before the bankruptcy petition date, but less than one year before that date. Thus, to be successful on this claim, the Trustee must show the Debtor was insolvent on the date of the Revenue Transfer.

If a plaintiff is successful in proving the elements of a preferential transfer claim under § 547(b), the defendant may escape liability under one or more of the nine affirmative defenses set out in § 547(c). Mr. Linder has raised three here, § 547(c)(1), § 547(c)(2) and § 547(c)(4), which provide:

> **(c)** The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

    **(A)** intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

    **(B)** in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—

    **(A)** made in the ordinary course of business or financial affairs of the debtor and the transferee; or

    **(B)** made according to ordinary business terms;

* * * * *

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

    **(A)** not secured by an otherwise unavoidable security interest; and

    **(B)** on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

11 U.S.C. § 547(c)(1), (2) and (4). The defenses asserted by Mr. Linder are generally referred to as the contemporaneous exchange of new value (§ 547(c)(1)), subsequent new value (§ 547(c)(4)), and ordinary course of business (§ 547(c)(2)) defenses. Mr. Linder bears the burden of establishing these defenses.

## B. The Trustee's Motion

The Trustee seeks partial summary judgment on all of the elements of § 547(b), except element (3) concerning the insolvency of the Debtor at the time of the transfer. Of the elements the Trustee seeks judgment on, Mr. Linder only challenges the

second element, § 547(b)(2)—whether the transfer was made for or on account of an antecedent debt owed by the debtor before such transfer was made.

To determine whether the Revenue Transfer was for payment of an antecedent debt, the Court must first understand the circumstances that gave rise to the payment. On this issue, the parties are vague, although the Court gathers that the transfer was made by the Debtor to Mr. Linder pursuant to a "personal override" on certain oil and gas wells.[13] However, the record does not include the agreement or agreements that created the override, and neither party refers to such an agreement or its terms.

Moreover, neither party cites any case law holding that the payment on an overriding royalty interest is payment on an antecedent debt.[14] The Trustee simply notes that "antecedent debt" is not defined in the Bankruptcy Code and that case law has clarified that it means that the debt exist prior to the transfer.[15] Mr. Linder cites no case law in support of his position, but simply states that the payment was not for an antecedent debt because "[o]nce the oil is produced it takes time to calculate how much is owed to each royalty owner and to collect the funds to pay those who were owed the funds," which takes more than a month.[16]

Although not cited by either party, the court in *In re ATP Oil & Gas Corp.*, 540 B.R. 294 (Bankr. S.D. Tex. 2015) considered, among other things, whether payment of an overriding royalty was a payment on an antecedent debt. The court began its analysis by explaining that the definition of "antecedent debt" is a federal question, not a state law question, and noting that the "[t]he Fifth Circuit has adopted a broad

---

[13] *See* Declaration of Roger D. Linder, ¶ 3 (ECF #55-1) ("In December 2016, I was paid $18,707.27 for oil production wells that I owned a personal override on….") (The Trustee challenges the use of Linder's supposedly self-serving and conclusory declaration.); Trustee's Statement of Material Facts in Dispute, ¶ 14 (ECF #58) (concerning discovery requests concerning "overriding royalty interests and/or net working interests" related to the $18,707.27 payment) (Mr. Linder challenges that statement on other grounds.).

[14] *See* Trustee's Memorandum in Support, p. 12 (ECF #58); Roger Linder's Opposition, p. 4 (ECF #60); and Trustee's Opposition, p. 5 (ECF #61).

[15] Trustee's Memorandum in Support, p. 12 (ECF #58) (citing *Southmark Corp. v. Schulte Roth & Zabel*, 88 F.3d 311, 316 (5th Cir. 1996)).

[16] Roger Linder's Opposition, p. 4 (ECF #60). *See also* Roger Linder's Memorandum in Support, p. 4 (ECF #55) (same).

definition of the term 'antecedent debt' for purposes of § 547(b)."[17] The court also noted that "debt" is synonymous with "claim" and "[t]he definition of 'debt' can therefore be restated as 'a *liability* for payment, whether or not such liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'"[18] Significantly, "[a] debt need not arise from a loan for purposes of § 547(b)," and "courts have applied this broad definition to find a creditor-debtor relationship under § 547(b) under a wide range of circumstances."[19] The court cited case law showing that a payment made based on a prior agreement (e.g., a lease contract or interest in future oil proceeds) or obligation (even a Ponzi scheme) qualifies as an "antecedent debt" under the Bankruptcy Code.[20]

Relevant to this case, *ATP* addressed the question of overriding royalty interests ("ORRIs") under Louisiana law in the context of the antecedent debt issue under § 547(b). The court wrestled with whether the ORRIs in that case were real property interests or debt instruments under Louisiana law, but it noted that in either event a payment could constitute a "debt" under the Bankruptcy Code.[21] In *ATP*, the main issue was not whether the payment was made on a debt or whether that debt was antecedent, but rather on whether the payments came from the Debtor's own property or not.

In this case, it appears that the payments were made pursuant to an ORRI, but the Court does not have the underlying instrument(s) before it, nor have the parties presented much in the way of legal argument or case law support for their positions. Based on *ATP*'s reasoning, it appears likely the Royalty Transfer will qualify as an "antecedent debt." However, because the parties have failed to present sufficient facts and documentation concerning the nature of Mr. Linder's interest or

---

[17] 540 B.R. at 302.
[18] *Id.* (emphasis in *ATP*).
[19] *Id.*
[20] *Id.* at 302-03 (discussing cases).
[21] *Id.* at 303.

developed the relevant legal arguments, summary judgment is not appropriate at this time.

### C.  Mr. Linder's Motion

#### 1.  New Value Defenses under § 547(c)(1) and (4)

Two of Mr. Linder's defenses concern "new value" under § 547(c)(1) and (4), which are related. The distinction between the defenses is largely whether the new value was given contemporaneously or after the transfer. For purposes of both provisions, "new value" is defined as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under applicable law...."[22] "In other words, the creditor must establish that it provided the debtor with 'something new that is of tangible value.'"[23]

With respect to the new value defense concerning the Revenue Payment, Mr. Linder's entire argument is as follows: "The wells in which Mr. Linder had an interest continued to produce after December 2016. Additionally, after the December Production Payment, LOCAP failed to pay Linder an additional $81,835.41 of future production payments."[24] Mr. Linder's Opposition to the Trustee's Motion devotes more space to the issue but similarly rests on the conclusory statement that "[t]he Rent Payments and the Production Payments [i.e., Revenue Transfer] provided subsequent new value as defined by 11 U.S.C. § 507(c)(4)" without actually explaining *how* the transfer constitutes "new value,"[25] much less setting out any jurisprudence to support the proposition. The Trustee argues in her Opposition that "Linder doesn't identify what 'new value' was provided subsequent to [the] Revenue Transfer...."[26]

---

[22] 11 U.S.C. § 547(a)(2).

[23] *In re Gulf Fleet Holdings, Inc.*, 485 B.R. 329, 338 (Bankr. W.D. La. 2013), quoting *In re Martin Wright Electric Co.*, 2008 WL 114926, at *9 (Bankr. W.D. Tex. Jan. 9, 2008) (citing *In re Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d 224, 230 (5th Cir. 1988)).

[24] *See* Roger Linder's Memorandum in Support, p. 6 (ECF #55) (footnotes to Statement of Uncontested Material Facts omitted).

[25] *See* Roger Linder's Opposition, p. 6 (ECF #60).

[26] Trustee's Opposition, p. 8 (ECF #61).

Given the lack of any jurisprudential or factual support for the proposition that the Revenue Transfer constituted "new value" within the meaning of the Bankruptcy Code, the Court will deny summary judgment on the affirmative defense. Simply put, there is nothing in the record showing Mr. Linder provided any value to the Debtor after he received payment of the overriding royalty interest.

### 2. Ordinary Course of Business Defense under § 547(c)(2)

Mr. Linder also asserts the ordinary course of business defense under § 547(c)(2). Here, the question is not whether the debt was incurred in the ordinary course of business, as Mr. Linder's mineral interest existed prior to the transfer, and the parties are not challenging that point. Rather, "the dispute centers on whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry [under § 547(c)(2)(A) of the Code]) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry [under § 547(c)(2)(B) of the Code])."[27]

With respect to the now-waived Office Rent Transfers claim, Mr. Linder asserted that the transfer satisfied both the subjective and objective prongs of the "ordinary course" defense, but with respect to the Revenue Transfer at issue here, he asserts only the objective prong: "The Production Payment was made in the Ordinary Course of Business under the Objective Prong. Based on the industry, the payment in the second month after production is in the ordinary course of business."[28] In his Opposition to the Trustee's motion, he argues: "The Production Payment was made in the Ordinary Course of Business under the Objective Prong. Based on the industry, the payment in the second month after production is in the ordinary course of business."[29] In both cases, Mr. Linder cites only to ¶ 5 of his own Statement of Uncontested Material Facts, which states: "The Production Payment was made in the Ordinary Course of Business under the Objective Prong. Based on the industry, the

---

[27] *In re Gulf Fleet Holdings*, 485 B.R. at 336 (citing *In re SGSM Acquisition Co., LLC,* 439 F.3d 233, 239 (5th Cir. 2006)).

[28] *See* Roger Linder's Memorandum in Support, p. 5 (ECF #55).

[29] *See* Roger Linder's Opposition, p. 8 (ECF #60).

payment in the second month after production is in the ordinary course of business."[30] The Statement cites only to Mr. Linder's own declaration, which states, in relevant part, that "[i]t is ordinary and customary in the oil industry to pay the override within 60 days of the end of the month in which the production occurred."[31]

The Trustee argues that Mr. Linder has not met his burden to establish the defense because he simply makes the conclusory statement in his "self-serving" declaration without providing the necessary analysis or any outside support. The Trustee cites *Lefoldt v. Nabors Offshore Corp. (In re Whistler Energy II, LLC)*, 608 B.R. 655, 662 (Bankr. E.D. La. 2019), for the proposition that the objective test "requires the court to examine the industry in which the debtor and creditor operate to determine what usual or ordinary business practices are in that industry," and the Trustee argues that "[p]arties have relied upon experts to satisfy this defense in the context of oil and gas drilling and production,"[32] but Mr. Linder does not profess to be an expert in this industry.

The Trustee also argues that Mr. Linder's declaration alone would be insufficient even if it were not "self-serving" because, as the court explained in *Morris v. Sampson Travel Agency, Inc. (In re U.S. Interactive, Inc.)*, 321 B.R. 388, 393 (Bankr. D. Del. 2005), "courts look for objective, definitive evidence supported by specific data to meet the burden of proof." Also, in *In re Conex Holdings, LLC (Stanziale v. Southern Steel & Supply, L.L.C.)*, 518 B.R. 269 (Bankr. D. Del. 2014), the court pointed out the need for specific data to prove an industry standard: "[Defendant] has not met its burden of proof in providing the Court with enough information to determine the 'ordinary business terms' in the industry. Courts have rejected evidence of an industry standard where it is too general. Instead, courts look for objective definitive evidence supported by specific data to meet the burden of proof."[33]

---

[30] *See* Roger Linder's Statement of Uncontested Material Facts, ¶ 5 (ECF #55-1).
[31] *See* Roger Linder's Declaration, ¶ 3 (ECF #55-1).
[32] *See* Trustee's Opposition, pp. 6-7 (citing *Lefoldt*).
[33] *Id*. at 287 (internal quotation marks and citation omitted).

12

Here, the Court finds that Mr. Linder has not submitted sufficient evidence from which the Court can draw any meaningful conclusions about what constitutes the ordinary course of business in the context of oil and gas royalty payments beyond his own declaration, which itself cites to no extrinsic evidence. Accordingly, the Court will deny summary judgment.

## Conclusion

For the reasons set out above,

IT IS ORDERED that both Mr. Linder's Motion for Summary Judgment (ECF #54) and the Plaintiffs' Motion for Partial Summary Judgment (ECF #57) are DENIED WITHOUT PREJUDICE.